IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CANDACE SHIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-469-WKW |
| | ) | [WO] |
| CREDIT CENTRAL SOUTH, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Credit Central South, LLC's motion for summary judgment. (Doc. # 24.) At the court's directive (*see* Doc. # 27), Plaintiff Candace Shivers filed a response in opposition. (Doc. # 28.) No reply brief has been submitted. Upon consideration of the parties' arguments, the evidence, and the relevant law, the court concludes that Credit Central's motion is due to be denied.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3). Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*; Fed. R. Civ. P. 56(c)(1)(A).  Or, the movant can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B).  If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Celotex*, 477 U.S. at 324.  A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor.  *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III. BACKGROUND

**A.    <u>Facts</u>**

Credit Central is a consumer loan company with branches in several locations in the Southeastern United States.  Ms. Shivers was employed by Credit Central at its location in Andalusia, Alabama, from July 9, 2012, until February 26, 2013, but as explained *infra,* her last day of work was November 12, 2012.  Credit Central typically employs three people per office.  When an office has opened one thousand accounts, it may hire a part-time employee.  The Andalusia branch where Ms. Shivers worked reached that benchmark in June 2012, and hence, its manager, Brennon Peavy, hired Ms. Shivers in July as a part-time customer service representative ("CSR") and assistant manager working approximately twenty-five hours per week.[1]  Ms. Shivers had previous experience working in the consumer loan industry and was hired to work at $10.25 per hour.[2]

At the time that Ms. Shivers was hired, the branch was at its appropriate number of employees – three-and-a-half – which included a manager, Mr. Peavy, a full-time assistant manager, Bridgett Mitchell, a full-time CSR, Terri Crenshaw, and Ms. Shivers.   Mr. Peavy allegedly anticipated growth in the business and

---

[1] Credit Central represents that Ms. Shivers was hired as a part-time assistant manager ("AM").  Her employment records indicate that she was to serve in both capacities part-time. (*See* Doc. # 24-1, at a (indicating both "CSR" and "AM," with "CSR" scribbled over.).)  The court accepts Ms. Shivers's allegation that she was hired to work part-time in either role.

[2] The Amended Complaint states that Ms. Shivers earned $10.50 per hour, but her pay records reflect that she was paid $10.25 per hour.

represented to Ms. Shivers that "her hours and duties would increase eventually and that after the tax season she would achieve full-time status in the assistant manager position." (Am. Compl., at 2.) At all relevant times, Ms. Shivers was the only black employee in Andalusia's office; all of her coworkers and managers were white. There is no contention that Ms. Shivers's job performance was less than exemplary.

In August, Ms. Crenshaw needed to take a prolonged absence for a medical condition. Mr. Peavy hired an additional part-time CSR, Trista Walker, who is Ms. Crenshaw's sister. Ms. Walker lacked experience in the consumer loan industry and therefore was paid less than Ms. Shivers ($9.00 per hour). During Ms. Crenshaw's two-month absence, Ms. Shivers saw an increase in her hours and regularly worked forty hours per week. Ms. Walker also worked more hours than a part-time employee normally would have worked during Ms. Crenshaw's medical leave, but she did not receive as many hours as Ms. Shivers. (*Compare* Doc. # 24-7, at 2, *with* Doc. # 24-5, at 3.)

Then, in November 2012, things changed for Ms. Shivers. Ms. Crenshaw returned to work full-time on November 12. Ms. Shivers understood that the increased hours during September and October would end when Ms. Crenshaw came back to work, (Shivers Dep., at 46–47), but Ms. Shivers anticipated returning to part-time status. Instead, she says, she was not given *any* hours. Ms. Shivers

4

alleges that, when she talked to Mr. Peavy about the situation, he told her that she and Ms. Walker essentially would be splitting a part-time position and that he could offer each of them around ten hours a week.  Ms. Shivers said she would work whatever hours the company would give her, but she was never scheduled to work again.[3]  She even agreed to a reassignment to another company location in South Alabama, but was not given another position.  When she attempted to contact Brandon Sanford, the regional manager, about her situation, he did not return her calls.

Meanwhile, however, Ms. Walker continued to work hours – more than the meager ten hours proposed by Mr. Peavy to Ms. Shivers.[4]  And on January 3, 2013, Ms. Walker was promoted and given a pay raise to $9.45 an hour.  She received the latter during her part-time status – a benefit that Mr. McCormack says only full-time employees are supposed to receive.  (McCormack Dep., at 46.)  Ms. Shivers considers herself effectively terminated as of her last day in November that

---

[3] Credit Central disagrees with Ms. Shivers's allegation.  Its corporate representative, Vice President Tim McCormack, says that someone else beneath him in the company told him that Ms. Shivers refused to work such measly hours, (McCormack Dep., at 45, 47), but as Ms. Shivers asserts, his testimony is hearsay.  Mr. Peavy, who would know best whether Ms. Shivers was willing to work a reduced number of hours, was fired from his position in late February 2013, and his testimony is not in the record.  Furthermore, Credit Central has not submitted any time schedule, calendar, or other written communication showing that Mr. Peavy tried to schedule Ms. Shivers for hours that she refused to work.

[4] For the two-week periods ending November 30, 2012, December 14, 2012, December 28, 2012, and January 11, 2013, Ms. Walker worked 58.5, 70, 65.50, and 60.50 hours.  Records also show that she was compensated for eight hours of vacation and nineteen-and-a-half hours of holiday leave during that time period.  (Doc. # 24-7, at 2.)

she worked for Credit Central, but she was not technically terminated by Credit Central until February 26, 2013. Ms. Shivers posits that, if Credit Central's office was truly constrained by a lull in business, Mr. Peavy should have either tried to distribute the limited number of hours fairly among all of the employees, or alternatively, given Ms. Shivers the hours that it gave Ms. Walker because Ms. Shivers had more experience and company seniority.

## B.  **Procedural History**

Ms. Shivers filed a charge of discrimination with the Equal Employment Opportunity Commission on February 20, 2013. She received a Notice-of-Right-to-Sue letter on or about April 26, 2013, and, proceeding *pro se*, she filed a complaint with this court on July 3, 2013. After she retained counsel, counsel amended the complaint with the court's leave on January 3, 2014. Ms. Shivers alleges that Credit Central refused to give her hours, effectively terminated her, and refused to promote her on the basis of her race. Credit Central moved for summary judgment on June 23, 2014. She brings her claims pursuant to Title VII of the Civil Rights Act of 1964. On August 15, 2014, this court entered an order directing Ms. Shivers to file a response, which had been neglected. On August 22, 2014, she complied.

# IV.  DISCUSSION

## A.   **The Title VII Framework**

Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1).  Where there is no direct evidence of unlawful race-based discrimination, which is usually the case, a Title VII plaintiff must use the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to show indirect evidence of discrimination.  *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174, 1181 (11th Cir. 2010).  Under this paradigm, the plaintiff must first make a prima facie case of discrimination.  She does so by demonstrating that: "(1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her."  *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012). "[S]ummary judgment . . . is appropriate if [the plaintiff] fails to satisfy any one of the elements of a prima facie case."  *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir. 1998).

But if the plaintiff makes her prima facie case of discrimination, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its

7

actions." *Gate Gourmet*, 683 F.3d at 1255.   If the defendant proffers a nondiscriminatory reason, the burden returns to the plaintiff, who must show that the proffered reason is a ruse for the real, discriminatory reason.  *Id.*  "Provided that the proffered reason is one that might motivate a reasonable employer, [the plaintiff] must meet that reason head on and rebut it."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).   She does not rebut the reason "by simply quarreling with the wisdom of that reason," *id.*, but by exposing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's reasoning.  *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007).

## B.   **Application of the Framework**

### 1.   *Prima Facie Case of Discrimination*

Defendant contends that Ms. Shivers cannot make a prima facie case of unlawful, race-based discrimination because (1) Ms. Shivers made more money per hour than Ms. Walker ever did and (2) Ms. Walker was not promoted to part-time assistant manager "at the time of the alleged discriminatory treatment in November of 2012."  (Doc. # 24, at 10.)[5]  In other words, Credit Central proposes that Ms. Walker cannot serve as the better-treated comparator because she and Ms.

---

[5] Credit Central does not dispute that (1) Ms. Shivers is a member of a protected class, (2) that she was qualified for continued employment in her part-time capacity as a CSR or assistant manager or in those same roles on a full-time basis, or (3) that she suffered an adverse employment action.

Shivers were not "similarly situated." (Doc. # 24, at 12 (quoting *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999)).) The requirement that a comparator be "similarly situated" – at least as the term is used in *Lathem* and the line of cases it cites – is pertinent where a plaintiff claims that a defendant applies its rules, particularly disciplinary rules, differently to her and not to other employees. The requirement ensures that an employer is not judged wrongly for meting out different punishment when the comparator's case called for no discipline or different discipline than what the plaintiff received. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) ("The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.").

A disciplinary situation is not before the court in this case. It is not clear, therefore, why Credit Central invokes *Lathem*. What is clear is that Credit Central is attempting to argue that Ms. Shivers received better treatment than Ms. Walker during her tenure, and hence, there is no comparator and no prima facie case of discrimination. Ms. Shivers maintains that Ms. Walker is an adequate comparator. She asserts that Ms. Walker did not receive the same reduction in hours, even though Ms. Walker had less experience in the loan business and had worked for Credit Central for less time than Ms. Shivers.

Upon consideration of the parties' contentions, the court concludes that Ms. Walker has demonstrated disparate treatment.  There is no testimony or evidence in the record to suggest that the differences between Ms. Shivers and Ms. Walker that have been identified by Credit Central are relevant.   Specifically, there is no evidence that Ms. Walker's slightly lower rate of hourly pay and her status as CSR (as opposed to an assistant manager) made any difference to Mr. Peavy when he decided to reduce or to stop assigning hours to Ms. Shivers.[6]  On this record, Ms. Walker and Ms. Shivers were both part-time employees who could have been scheduled to work roughly ten hours each.  Instead, Ms. Walker was given all of the part-time position's hours (and more), even though she had less experience and seniority than Ms. Shivers.  Because there is evidence that a white employee was treated more favorably, Ms. Shivers makes a prima facie case of discrimination, and the burden shifts to Credit Central to offer a legitimate non-discriminatory reason for denying Ms. Shivers her part-time hours and terminating her employment.

---

[6] Ms. Shivers has alleged and testified that she performed the duties of both a CSR and assistant manager.  Credit Central has not argued that Ms. Shivers training as a part-time assistant manager made her a less useful part-time employee.  Credit Central's argument that Ms. Shivers and Ms. Walker could have split the available part-time hours evenly suggests that the additional training or responsibilities that Ms. Shivers may have had made no difference in the assignment of hours.

## 2.  *Proffered Non-Discriminatory Reason and Rebuttal*

Credit Central asserts that, even if Ms. Shivers could prove her prima facie case of discrimination, she cannot show that Credit Central's proffered reason for its reduction of her hours is a pretext for discrimination.  Credit Central claims that Ms. Shivers's hours were reallocated to Ms. Crenshaw upon Ms. Crenshaw's return from medical leave.

There is no dispute that Credit Central had a legitimate reason for reducing Ms. Shivers's hours once Ms. Crenshaw returned to work.  But a partial reduction in hours is not in Ms. Shivers's complaint.  Ms. Shivers is vexed that her hours were eliminated altogether and given to a white employee with less seniority and experience who was promoted less than two months later into the position that Ms. Shivers once held.  Credit Central offers no reason for Ms. Shivers's complete reduction in hours except that Ms. Shivers told Mr. Peavy that she refused to work if it meant that she must accept such a drastic reduction in hours.  Assuming that Credit Central can offer admissible evidence to show that Ms. Shivers refused to work ten hours,[7] her refusal is a genuinely disputed issue of fact because Ms. Shivers testifies that she stood willing to accept any hours, or even an alternative work assignment in another branch location.  Her contention that her former

---

[7]  "[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse employment action against the plaintiff.]"  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981).

employer's proffered reason is false is sufficient for Ms. Shivers's claim to survive summary judgment. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998) (allowing a plaintiff to rebut the proffered non-discriminatory reasons by either "showing that the . . . reasons should not be believed" or alternatively, "by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons.").

Acknowledging that Ms. Shivers's alleged refusal of the hours is a disputed issue, Credit Central still argues that the allegations of race discrimination are conclusory and supported by only "[Ms. Shivers's] own impressions of the situation." (Doc. # 24, at 15–16.) Indeed, there may be little else to suggest discriminatory animus in this case, but Ms. Shivers has cleared the hurdles imposed by the *McDonnell Douglas* burden-shifting framework, and the question of whether Credit Central discriminated on the basis of race is now a question for a jury. *See Wilson*, 376 F.3d at 1088 ("A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination.") (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000)). Hence, the motion for summary judgment is due to be denied.

## V.  CONCLUSION

Based on the foregoing analysis, it is ORDERED that Defendant's motion for summary judgment (Doc. # 24) is DENIED.

DONE this 14th day of October, 2014.

                                    /s/ W. Keith Watkins
                        _____
                        CHIEF UNITED STATES DISTRICT JUDGE